FILED
2006 Jul-19 PM 01:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION

OWNERS INSURANCE COMPANY,      }
                               }
     Plaintiff,                }
                               }   CIVIL ACTION NO.
v.                             }   06-AR-00527-S
                               }
TIDWELL DEWITT, LLC, et al.,   }
                               }
     Defendants.               }
```

**MEMORANDUM OPINION**

The court has before it two motions for summary judgment. The motion filed by defendants and counter-claimants Tidwell Dewitt, LLC ("Tidwell Dewitt"), Raiford G. Dyer ("Dyer"), and David Forrestall ("Forestall") (collectively, the "Tidwell defendants"), seeks summary judgment that it is the duty of Owners Insurance Company ("Owners") to defend and indemnify the Tidwell defendants in all aspects of a pending arbitration action. The cross-motion filed by Owners seeks summary judgment as to its duty to defend or indemnify every claim brought by the arbitration claimants. For the reasons to follow, summary judgment is due to be granted to Owners as to its duty to defend and to provide indemnification for some of the arbitration claims, but denied in all others.

*Facts*[1]

The Tidwell defendants are currently involved in an arbitration action brought by Collegiate Internet Company, LLC ("Collegiate Internet"), William Buchalter ("Buchalter"), Webshoppe Communications, Inc., and Webshoppe, LLC (collectively, "Webshoppe"), the other defendants in this action. The arbitration demand contains eight counts, styled as follows: negligence/malpractice, breach of fiduciary duty, negligent and/or wanton supervision, breach of contract, fraud, fraud as to William Buchalter individually, fraudulent suppression, and promissory estoppel.

The underlying dispute centers around a start-up venture, Collegiate Internet, formed by Buchalter with the assistance of Dyer and Tidwell Dewitt. Although Buchalter originally approached Dyer in his capacity as Chief Executive Officer of Tidwell Dewitt, an accounting and consulting company, Dyer represented to Buchalter that he intended to leave Tidwell Dewitt to run Collegiate Internet. In exchange, Dyer was to receive an ownership interest in Collegiate Internet. Dyer assisted Collegiate Internet in,

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance with this standard, this statement of facts includes both undisputed facts and, where there is a dispute, the facts according to the non-movant's evidence, and the legitimate inferences therefrom.

2

*inter alia*, raising capital and acquiring Webshoppe. The arbitration demand does not allege whether these and other services performed by Dyer were pursuant to a professional agreement between Collegiate Internet and Tidwell Dewitt, or arose from the partnership agreement between Dyer and Buchalter. Buchalter and Collegiate Internet did contract with Tidwell Dewitt to perform accounting and consulting services, and to allow Forrestall, Tidwell Dewitt's Chief Information Officer, to serve as a technical and management consultant to Collegiate Internet and Webshoppe. The arbitration claimants allege that the Tidwell defendants performed these various services deficiently, causing the Collegiate Internet venture to fail.

Owners' involvement in this action stems from a general liability policy[2] that it issued to Tidwell Dewitt. The policy provides that Owners will defend and indemnify Tidwell Dewitt and its members or employees from any "'bodily injury' or 'property damage'" resulting from an "occurrence" within the policy, unless the injury is expressly excluded from coverage. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Three exclusions are relevant to this action:

---

[2] In reality, Owners issued a number of successive policies to Tidwell Dewitt between 1999 and 2005, but the court refers to these as a single policy because the material provisions of the policies are identical.

3

    j.    "Bodily injury" or "property damage" due to rendering or failure to render any professional service.  This includes but is not limited to:

           (1) Legal, accounting, or advertising services . . . .

    m.    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

**Absolute Exclusion for Fraud, Misrepresentation, Deceit or Suppression or Concealment of Material Fact**

> This policy does not apply to any claim arising out of fraud, misrepresentation, deceit, suppression or concealment of fact, whether intentional, unintentional, innocent, negligent, willful, malicious, reckless or wanton, including, but not limited to an action or lawsuit demanding or seeking damages or recovery based on direct liability, vicarious liability or agency principles.

Tidwell Dewitt paid all premiums due on the policy, but Owners nevertheless refused to defend or indemnify Tidwell Dewitt when given proper notice of the claims asserted in the arbitration demand.  Owners subsequently brought this action to resolve these coverage questions.

*Analysis*

The liability insurance policy at issue contains independent obligations to defend and to indemnify the Tidwell defendants, but "[i]t is well established that the insurer's duty to defend is more extensive than its duty to pay." *U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985).  Even if the court were to order that Owners must defend the Tidwell defendants in the

arbitration, Owners could do so while reserving its right not to provide indemnification if it is ultimately determined that the arbitration claimants' injuries are not covered by the policy.

"Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003) (citing *Armstrong*, 479 So. 2d at 1168). However, "the court is not limited to the bare allegations of the complaint . . . but may also look to facts which may be proved by admissible evidence." *Pacific Indem. Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 795 (Ala. 1964). Relevant to this action, when a "complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy." *Tanner*, 874 So. 2d at 1064. The court therefore must determine Owners' obligation to defend by analyzing each count of the arbitration demand separately. "Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden of proving the applicability of any policy exclusion." *Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996) (citations omitted).

**I.     Negligence/Malpractice**

Count One of the arbitration demand alleges negligence and/or malpractice against all respondents. Owners first asserts that this claim does not seek "bodily injury" or "property damage," and thus is not covered by the policy. Such an argument is futile when Count One alleges, as does every count in the arbitration demand, that the claimants suffered mental anguish. Under Alabama law, mental anguish is a bodily injury that triggers an insurer's duty to defend. *See, e.g., Am. States Ins. Co. v. Cooper,* 518 So. 2d 708, 710 (Ala. 1987); *Morrison Assurance Co. v. North Am. Reins.*, 588 F. Supp. 1324, 1327 (N.D. Ala. 1984). Thus, the allegation of mental anguish alone is sufficient to overcome summary judgment on this basis. *See Tanner*, 874 So. 2d at 1061.[3] Owners next claims that the allegations of Count One do not amount to an "occurrence." Alabama courts have consistently embraced a broad interpretation of the term "occurrence," holding that "negligence claims . . . present a sufficient basis to support the . . . declaration of a duty to defend." *Universal Underwriters Ins. Co. v. Youngblood*, 549 So. 2d 76, 78 (Ala. 1989); *see also United States Fidelity & Guar. Co. v. Bonitz Insulation Co. of Alabama*, 424 So. 2d 569, 571 (Ala. 1982). Therefore, because evidence of negligent action would prove

---

[3] Although it may well be true, as Owners argues, that the arbitration claimants cannot as a matter of law recover mental anguish damages for at least one of the causes of action asserted, that ultimate determination impacts only Owners' duty to indemnify, not its duty to defend.

6

the Tidwell defendants' liability as to Count One, this claim is sufficiently accidental to qualify as an occurrence, and Owners cannot avoid its duty to defend by relying on this provision.

Although the allegations of Count One are covered by the policy unless they are specifically exempted, Owners asserts that two policy exclusions do apply in this context: the "your work" exclusion and the "professional services" exclusion. Owners' first argument is unavailing because the exclusion is limited by its terms to "property damage," and therefore does not touch the bodily injuries of which the arbitration claimants complain. The "professional services" exclusion cannot be dismissed so easily. The policy language exempts injuries "due to rendering or failure to render any professional service." Although the arbitration demand clearly alleges that there was a professional relationship between the Tidwell defendants and the claimants, it also is reasonably construed to allege that Dyer and Buchalter formed some form of partnership independent of the accountant-client relationship. *See, e.g.*, Arbitration Demand, 8 ("Mr. Dyer assured Mr. Buchalter that he would indeed leave Tidwell Dewitt to run the new business and would assist in running it through Tidwell Dewitt until he did leave."); *id.* at 9-10 ("In reliance on Mr. Dyer's and the Tidwell Dewitt entities' representations and advice, Mr. Buchalter formed Collegiate Internet and offered Mr. Dyer an ownership interest in exchange for raising the $5 million in

capital and coming aboard to run it."). In this context, professional services are those services arising out of the accountant-client relationship, rather than a partnership or other relationship. *Tanner*, 874 So. 2d at 1065. Because the defining characteristic of a professional service is the relationship which spawns it, this provision can potentially exclude a broader range of activities than merely traditional accounting services, as argued by the Tidwell defendants. At the same time, Owners' interpretation of the provision, which would define effectively all services performed by Tidwell Dewitt as "professional services" solely because Tidwell Dewitt holds itself out as an accounting firm, is equally misguided. Pursuant to the correct definition, there is insufficient information in the arbitration demand to categorize the services alleged in Count One with any certainty.[4] Under similar circumstances, the Alabama Supreme Court held that "[w]hether the actions of [defendants] which allegedly damaged [plaintiff] were professional services within the exclusion is a **question of fact**." *Armstrong*, 479 So. 2d at 1169 (emphasis added). Because the court cannot determine from the face of the arbitration demand whether the actions alleged in Count One arise entirely out

---

[4] The arbitration claimants' framing of this Count as a claim for "professional and other services" is not binding on this court and has no impact on the instant analysis. "Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005).

of the accountant-client relationship between the arbitration claimants and the Tidwell defendants, and the parties have not presented any evidence that resolves this question, the motions for summary judgment are due to be denied, and the resolution of this genuine issue must await the evaluation of a fair-minded finder of fact.  The conclusion would have been different had the arbitration demand clearly alleged that the actions forming the basis of Count One had their genesis in the partnership between Buchalter and Dyer, and not in the professional relationship between the arbitration claimants and the Tidwell defendants, or vice versa.

**II.  Breach of Fiduciary Duty**

Count Two alleges breach of fiduciary duty against all respondents.  Owners first argues that Count Two does not constitute an occurrence.  However, as with Count One, only negligent conduct is required to prove a breach of fiduciary duty. Owners also asserts the applicability of the professional services exception, but the summary judgment record does not resolve this genuine issue of material fact.  The cross-motions for summary judgment are both due to be denied as to this claim.

**III. Negligent and/or Wanton Supervision**

Count Three alleges negligent and/or wanton supervision against all respondents, although the allegations contained therein cannot actually be construed to state a claim against Forrestall because he is the employee alleged to have been poorly supervised.

Although the possibility of proving this claim through negligent conduct means that Count Three asserts an occurrence, the face of the arbitration demand shows that the professional services exclusion exempts this claim from coverage under the policy issued to Tidwell Dewitt.  Tidwell Dewitt entered into a contract with the arbitration claimants whereby it provided Forrestall's services to the claimants in exchange for a monthly fee. Therefore, any negligent or wanton conduct related to the supervision of Forrestall would by necessity arise out of that professional agreement, rather than out of the partnership between Dyer and Buchalter.  For that reason, Count Three is a claim for professional services expressly excluded from insurance coverage, and summary judgment is due to be granted to Owners as to its duty to defend or indemnify this claim.

**IV.  Breach of Contract**

Count Four alleges breach of contract against all respondents. The parties again argue over whether a breach of contract is the type of "accident" that can constitute an occurrence within the insurance policy.  The Tidwell defendants offer that the Alabama Supreme Court has, on one occasion, held that a negligent breach of contract satisfies the occurrence requirement of a policy similar to the one issued to Tidwell Dewitt, but that policy included a caveat in the definition of "occurrence" that the injury must not be "expected []or intended from the standpoint of the Insured."

10

*Bonitz Insulation Co. of Alabama*, 424 So. 2d at 571.  The Alabama courts have logically interpreted this policy language to require a purely subjective test. *E.g.*, *Watson v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 465 So. 2d 394, 396 (Ala. 1985).  With policies defining an occurrence only as an "accident," however, the Alabama courts have abandoned that subjective test. *See, e.g.*, *Hartford Cas. Ins. Co.*, 928 So. 2d at 1011.  Therefore, *Bonitz* provides little guidance.  Owners proffers that the court should instead follow the holding and analysis of *Auto-Owners Insurance Co. v. Toole*, 947 F. Supp. 1557 (M.D. Ala. 1996).[5]  Although *Toole* makes a persuasive policy argument against coverage for most breaches of contract, its approach, adopted from the Supreme Court of Vermont, conflates the occurrence requirement with the professional services exclusion in that it considers whether the claim arises out of a "business dispute" in deciding whether an occurrence has been alleged. *See id.* at 1564.  By the terms of the policy issued to Tidwell Dewitt, characterization as an occurrence depends solely on whether an injury is accidental; the nature of the dispute is

---

[5] Owners does cite to two Alabama Supreme Court cases for the proposition that a breach of contract cannot be an occurrence, but neither provides any substantial support for that proposition. *See Reliance Ins. Co. v. Gary C. Wyatt, Inc.*, 540 So. 2d 688, 691 (Ala. 1988) (holding that no coverage existed because the breach of contract did not result in "bodily injury or property damage under the definitions within the policy"); *Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 314 (Ala. 1993) (holding with little analysis that no coverage existed because "the policy clearly excludes breach of contract claims from its coverage," not because a breach of contract does not amount to an occurrence).

11

relevant elsewhere in the coverage analysis.  In this context, where "the term 'accident' does not exclude human fault called negligence," *Armstrong*, 479 So. 2d at 1167, an unintentional breach of contract is sufficiently accidental to constitute an occurrence, especially considering the Alabama Supreme Court's admonition that "[e]xceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it." *Alliance Ins. Co., Inc. v. Reynolds*, 494 So. 2d 609, 612 (Ala. 1986) (citing *Westchester Fire Ins. Co. v. Barnett Millworks, Inc.*, 364 So. 2d 1137 (Ala. 1978)).

Owners also asserts that Count Four is a claim for professional services excluded by the policy.  The primary contract alleged to have been breached is the agreement for Tidwell Dewitt to provide Forestall's services to Collegiate Internet and Webshoppe in exchange for a fee.  This same contract creates a professional relationship between the parties, so, if this were the only allegation in Count Four, this claim could not be construed to arise out of the partnership relationship between Dyer and Buchalter.  However, the arbitration demand asserts that respondents breached other contracts as well, including the agreements to raise capital for and provide consulting services to Collegiate Internet, and the information contained in the demand does not reflect whether those agreements originated from the

12

professional or partnership relationship.  This genuine issue of material fact prevents summary judgment as to Count Four.

## V.   Fraud and Fraudulent Suppression

Counts Five, Six, and Seven allege, respectively, fraud, fraud as to Buchalter individually, and fraudulent suppression.  These claims fall within the purview of the absolute exclusion in the policy for all claims of "fraud, misrepresentation, deceit, suppression or concealment of fact."  Owners has no duty to defend or indemnify Claims Five, Six, and Seven, and summary judgment is due to be granted to Owners as to these claims.

## VI.  Promissory Estoppel

Count Eight alleges promissory estoppel against all arbitration respondents.  Owners argues that this Count does not allege an occurrence within the policy.  Although no party has cited any caselaw on point, the Alabama courts' broad interpretation of an occurrence and insistence on strictly interpreting policy exclusions against the insurer lead this court to conclude that Count Eight is sufficiently accidental because it does not require proof of intentional conduct on the part of the arbitration respondents. *See, e.g.*, *Youngblood*, 549 So. 2d at 78. The court cannot determine from the allegations of Count Eight whether the promissory estoppel claim arises entirely out of the accountant-client relationship, and thus cannot conclude whether

13

the professional services exclusion is applicable. For that reason, summary judgment is due to be denied as to Count Eight.

### *Conclusion*

For the reasons stated, Owners' motion for summary judgment will be granted in part and denied in part by separate order. The Tidwell defendants' motion will be denied in full.

DONE this 19th day of July, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE